# In the United States Court of Federal Claims

No. 25-2047C
(Filed Under Seal: April 13, 2026)
(Reissued: April 28, 2028)*
**FOR PUBLICATION**

```
****************************************
METROSTAR SYSTEMS, LLC,          *
                                 *
              Plaintiff,         *
                                 *
v.                               *
                                 *
THE UNITED STATES,               *
                                 *
              Defendant.         *
                                 *
****************************************
```

*James Y. Boland*, Venable LLP, Tysons, VA, for Plaintiff. Also on the briefs were *Lindsay M. Reed*, Venable LLP, Washington, D.C.; *Emily R. Marcy* and *Timothy S. Iversen*, Venable LLP, Tysons, VA.

*Brendan D. Jordan*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. Also on the briefs were *Brett A. Shumate*, Assistant Attorney General; *Patricia M. McCarthy*, Director, and *Corinne A. Niosi*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; and *Lisa L. Baker*, Counsel, Marine Corps Systems Command.

## OPINION AND ORDER

Plaintiff MetroStar Systems, LLC ("MetroStar") protests the decision of the Marine Corps Systems Command to cancel a solicitation after MetroStar submitted a proposal. *See* Compl. (ECF 1). The parties have filed cross-motions for judgment on the administrative record, *see* Pl.'s Mot. for J. on the Admin. R. ("Pl.'s MJAR") (ECF 26); Def.'s Cross-Mot. for J. on the Admin. R. & Resp. ("Def.'s Cross-MJAR") (ECF 30); Pl.'s Resp. & Reply to Def.'s Cross-MJAR ("Pl.'s Reply") (ECF 32); Def.'s Reply (ECF 33), and I have heard oral argument. I conclude that cancellation was not

---

* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on April 13, 2026, for the parties to propose redactions of confidential or proprietary information. The parties were directed to propose redactions by April 27, 2026. Proposed redactions were received from the Parties and a supporting joint memorandum. The Court has incorporated the proposed redactions and makes them with bracketed ellipses ("[. . .]" below.

arbitrary or capricious under the circumstances. The government's motion is therefore **GRANTED**, MetroStar's motion is **DENIED**, and the case is **DISMISSED**.

## BACKGROUND

Solicitation M6785424R7603 sought proposals for support services for the Marine Corps' Global Combat Support System. *See* Admin. R. ("AR") at 163. The Solicitation contemplated award after a two-step evaluation process. In that process, the Marine Corps would first identify the offerors with the best past performance and work experience, then perform a more detailed review of those offerors' proposals. *See* AR 228.

The Solicitation provided that the awardee would be responsible for preparing "change requests," defined as "any change made to the Global Combat Support System that is generated, planned, and executed outside of the Engineering Change Proposal process." AR 187. But the Solicitation did not provide any guidance on how *many* change requests a contractor could anticipate needing to make.

That omission led to a dilemma. The Corps' initial review identified MetroStar and CACI (the incumbent) as the offerors with sufficient past work experience. AR 2030, 2050. But at the second step of review, it turned out that MetroStar and CACI had very different expectations about how many change requests would be required. MetroStar expected about [. . .], based on a Marine Corps briefing that had disclosed the number of change requests in a recent year. AR 2380. But CACI expected between [. . .], based on its experience as the incumbent. AR 2380. The offerors' different expectations contributed to a wide difference in pricing. *Compare* AR 1577 (CACI proposal), *with* AR 1839 (MetroStar proposal); *see also* AR 2380.

The Marine Corps believed that both MetroStar and CACI had reasonably estimated change requests, given the information available. AR 2380–81. But the Corps was concerned that CACI, as the incumbent, may have had an unfair informational advantage. AR 2381. To make matters even more complicated, the Corps also believed that "[a]s a practical matter, *neither* offeror's interpretation would serve to properly address the entirety of the Marine Corps requirement for Change Requests." AR 2380 (emphasis added).

Those considerations diminished the Corps' confidence that an award to either offeror would obtain best value, while increasing the risk of post-award litigation and management conflict. AR 2382. The Marine Corps therefore decided to cancel the Solicitation and start over. *Id.*

The Corps noted that although the ambiguity about change requests "was the primary driver" for the cancellation, several other benefits were likely to result. AR

2381. The Corps anticipated (among other things) that drawing up a new solicitation would enable it to account for recent political developments; to correct potential problems in the evaluation and selection teams' membership; and to expand the scope of work to take advantage of an opportunity for technological upgrades. AR 2381–82.

While the Marine Corps based its cancellation on the need to resolve the ambiguity, it also cited a regulation governing situations where cancellation is required. AR 2382. That regulation provides that a contracting officer "shall cancel the original solicitation and issue a new one" when "an amendment proposed for issuance … is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them[.]" FAR § 15.206(e) (codified at 48 C.F.R. § 15.206(e)). The Corps did not explicitly discuss and reject options other than cancellation.

The Marine Corps accordingly cancelled the Solicitation, and MetroStar sued.

## DISCUSSION

### I.  Jurisdiction

To reach the merits of the case, I must first determine that the Court has jurisdiction over MetroStar's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). This Court's jurisdiction in pre-award bid protests is derived from the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(a)–(b), 110 Stat. 3870, 3874–75 (codified at 28 U.S.C. § 1491(b)). *See Dyonyx, L.P. v. United States*, 83 Fed. Cl. 460, 464–65 (2008). The Tucker Act now grants this Court "jurisdiction to render judgment on an action by an interested party objecting to ... the award of a contract or any alleged violation of statute or regulation in connection with a procurement[.]" 28 U.S.C. § 1491(b)(1). This Court is empowered under the statute to "award any relief that the court considers proper, including declaratory and injunctive relief[.]" 28 U.S.C. § 1491(b)(2).

To establish that it has statutory standing as an interested party, *see* 28 U.S.C. § 1491(b)(1); *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023), a plaintiff must show (1) that it "is an actual or prospective bidder" and (2) that it "possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002) (itself citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992))). Here, there is no dispute that MetroStar was an actual bidder that submitted a proposal.

Whether MetroStar has an economic interest depends on whether it has "a substantial chance of being awarded the contract" if its claims lead the Marine Corps to reconsider cancellation. *McVey Co., Inc. v. United States*, 111 Fed. Cl. 387, 405 (2013); *see also Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting *Rex Serv. Corp.*, 448 F.3d at 1308). The government argues that MetroStar did not have a "substantial chance" of award because its proposal was not awardable,[1] Def.'s Cross-MJAR at 16–17; Def.'s Reply at 9, based on the Marine Corps' view that neither MetroStar's nor CACI's proposal "would serve to properly address the entirety of the Marine Corps requirement for Change Requests." AR 2380. But earlier in the procurement process, the Marine Corps had described both proposals as "awardable, as presented." *See* AR 2065. MetroStar had already been deemed qualified for a review of its proposal, and it presumably would have taken the opportunity to revise its proposal if the chance had been offered. I therefore consider the government's evidence too thin to bear on MetroStar's statutory standing.

Bid protest plaintiffs must also have Article III standing. MetroStar has Article III standing because it claims an injury — specifically, loss of its opportunity to compete for award under the Solicitation as written — which is traceable to cancellation of the Solicitation, and which could be redressed by this Court. *See Lujan*, 504 U.S. at 560–61; *see also Weeks Marine*, 575 F.3d at 1359 ("The Court of Federal Claims, though an Article I court, ... applies the same standing requirements enforced by other federal courts created under Article III.").

## II.  Merits

MetroStar's claim boils down to the theory that the Marine Corps' cancellation decision was arbitrary and capricious.[2] *See Harmonia Holdings Grp., LLC v. United States*, 160 Fed. Cl. 674, 684 (2022) ("*Harmonia II*"); *see also Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004); 5 U.S.C. § 706. There are two ways of proving a procurement decision was arbitrary and capricious: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Harmonia II*, 160 Fed. Cl. at 684 (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)); *Weeks Marine*, 575 F.3d at 1358 (quoting *PGBA,*

---

[1] The government claims on that basis that MetroStar was not prejudiced by the cancellation. Def.'s Cross-MJAR at 16–17; Def.'s Reply at 9. I shall address the issue as it relates to jurisdiction.

[2] When resolving motions for judgment on the administrative record under Rule 52.1(c), this Court proceeds "as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005) (addressing former RCFC 56.1); *see also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012) (addressing the standard under RCFC 52.1 and citing *Bannum*, 404 F.3d at 1356).

*LLC v. United States*, 389 F.3d 1219, 1225 n.4 (Fed. Cir. 2004)). MetroStar's claim rests on the first of those approaches. Pl.'s Reply at 12. Its argument can be rejected straightaway.

### A. The Cancellation Decision Was Rational.

At the outset, the Marine Corps' decision to cancel the Solicitation was facially rational.

Cancelling a solicitation before award is one of the many ways in which agency contracting officers can exercise their discretion. *See Croman Corp. v. United States*, 724 F.3d 1357, 1363 (Fed. Cir. 2013); *see also Harmonia II*, 160 Fed. Cl. at 684; *Open Spirit, LLC v. United States*, 131 Fed. Cl. 756, 782 (2017); *Shields Enters., Inc. v. United States*, 28 Fed. Cl. 615, 635 (1993). This Court has sometimes located agency authority to cancel solicitations in FAR § 15.305(b), which provides that an agency "may reject all proposals received in response to a solicitation, if doing so is in the best interest of the Government." *See Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 126 & n.3 (2010); *see also* 10 U.S.C. § 3301(b) ("All sealed bids or competitive proposals received in response to a solicitation may be rejected if the head of the agency determines that such action is in the public interest.").

Consistent with the usual standard of review, "a rational basis … is sufficient" to justify cancellation. *Madison Servs.*, 92 Fed. Cl. at 126 (citing *DCMS-ISA, Inc. v. United States,* 84 Fed. Cl. 501, 513–14 (2008)); *Veterans Contracting Grp., Inc. v. United States*, 920 F.3d 801, 806 (Fed. Cir. 2019). Evaluating for rationality means determining "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1332–33 (quotes omitted) (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). Showing irrationality is very difficult to do, as this Court often repeats. It is particularly hard when it comes to cancellation of a solicitation, where agency discretion is broad. *Harmonia Holdings Grp., LLC v. United States*, 156 Fed. Cl. 238, 246 (2021) ("*Harmonia I*").[3] A "whim" is not enough to cancel a solicitation, *Veterans Contracting Grp.*, 920 F.3d at 806, but anything minimally rational will do.

---

[3] Some of this Court's decisions have said that an agency's discretion is at its "greatest" in that circumstance. *Harmonia I*, 156 Fed. Cl. at 246 (quoting *Madison Servs.*, 92 Fed. Cl. at 125). We have said the same thing about agencies' discretion in other situations. *Great S. Eng'g, Inc. v. United States*, 128 Fed. Cl. 739, 742 (2016) ("The Court affords an agency 'the greatest deference possible' in evaluating past performance in a negotiated procurement.") (quoting *Commissioning Solutions Global, LLC v. United States*, 97 Fed. Cl. 1, 9 (2011)); *Am. Auto Logistics, LP v. United States*, 117 Fed. Cl. 137, 180 (2014) ("[T]he evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials, and thus reviewing courts give the greatest deference possible to these determinations.") (quoting *Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 395 (2005)), *aff'd*, 599 F. App'x 958 (Fed. Cir. 2015). The point of that kind of

In particular, it is not enough to show that options other than cancellation were available to the Marine Corps, or even to persuade the Court that the other options were superior. *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018); *Harmonia II*, 160 Fed. Cl. at 689. When a corrective action is rational on its own terms, this Court cannot ask if it was the agency's most "narrowly targeted" option. *Dell Fed. Sys.*, 906 F.3d at 991–92. Nor is an agency "legally required to address every option" other than the corrective action it rationally chooses. *Id.* at 998.[4] The Corps' obligation was simply "to provide a reasonable corrective action and adequately explain its reasoning for doing so[.]" *Id.*; *see also BWhit Infrastructure Sols., LLC v. United States*, No. 23-813C, 2023 WL 7179267, at *8 (Fed. Cl. Oct. 31, 2023).

The Marine Corps easily meets that low bar here. It explained that the Solicitation contained an unexpected ambiguity that potentially advantaged the incumbent contractor. AR 2380–81. The Corps concluded that "neither offeror's interpretation would serve to properly address the entirety of the Marine Corps requirement for Change Requests." AR 2380. It identified practical concerns with proceeding to award notwithstanding the ambiguity, including litigation risk and contract management difficulties. AR 2382. And it identified several other potential opportunities to improve the Solicitation while restarting the procurement. AR 2381–82. That adds up to a rational basis for cancellation. *Madison Servs.*, 92 Fed. Cl. at 126.

Although the Corps did not explicitly address other options, it had no obligation to do so. *Dell Fed. Sys.*, 906 F.3d at 998. Its discussion of its decision and its reasons was more than enough to satisfy its obligation for rational decision making.

## B. MetroStar's Arguments Are Meritless.

MetroStar has little to say on its own behalf. MetroStar does not disagree in its opening brief that the Solicitation was ambiguous,[5] nor that the ambiguity was

---

language is presumably not to compare different exercises of discretion, but to emphasize agency authority.

[4] Some cases could be read to suggest that "[a]n amendment to a solicitation that is not necessary" amounts to "a pretext[.]" *Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 32, *on reconsideration in part*, 161 Fed. Cl. 110 (2022). That may overstate things, if taken literally.

[5] After filing its principal brief, MetroStar had a change of heart, and argued for the first time in its Response & Reply that no ambiguity existed. Pl.'s Reply at 7. I have sometimes allowed a party to present "additional argumentation in support of [its] basic claim" in a response and reply, even when the party "should ideally have presented th[e] specific point in its opening brief[.]" *22nd Century Techs., Inc. v. United States*, 176 Fed. Cl. 389, 399 (2025). Here, though, allowing MetroStar to raise a completely new challenge to the basic premise of the Marine Corps' decision would prejudice the government and encourage manipulation of the orderly briefing process. In addition, certain language

potentially prejudicial to the Marine Corps and the offerors. It does not dispute that the ambiguity could have led to litigation if the Marine Corps had proceeded to an award. Pl.'s MJAR at 27–28. MetroStar appears to concede that this Court cannot sustain a protest resting solely on "whether an amendment or cancellation is the better or more reasonable option." Pl.'s Reply at 12. Perhaps most importantly, MetroStar does not disagree with the Marine Corps that neither its proposal nor CACI's "would serve to properly address the entirety of the Marine Corps requirement for Change Requests," AR 2380, meaning that the Marine Corps could reasonably reject both proposals and try again. *See* FAR § 15.305(b); *see also Madison Servs.*, 92 Fed. Cl. at 126 & n.3. Instead, it offers a mix of irrelevancy and misdirection.

---

in MetroStar's opening brief could be interpreted as intentionally waiving the argument that the Solicitation was unambiguous. *See* Pl.'s MJAR at 27–28 (floating a concession that "the agency may have correctly assessed the possibility of post-award protest risk"). MetroStar does not seem to believe its own argument. Pl.'s Reply at 8 ("If the [Corps] believes it is appropriate to clarify the number of [change requests], it should be free to do so."). I therefore do not consider the issue preserved.

Even if the issue were genuine and MetroStar had preserved it, the notion that the Solicitation was unambiguous goes nowhere. Although MetroStar's first move is to claim ignorance about the nature of the ambiguity, *id.* at 7, MetroStar seems to understand perfectly well that it arose from the offerors' different factual impressions about how many change requests would be required. *Id.* That is one way that latent ambiguities sometimes arise. *See Knutson v. UGS Corp.*, 526 F.3d 339, 342 (7th Cir. 2008) ("A contract that provides for shipping cotton on the ship *Peerless* is not ambiguous on its face, but there is a latent ambiguity if there is more than one ship by that name to which the contract might (if all you know is what the contract says) refer.") (citing *Raffles v. Wickelhaus,* 2 H. & C. 906, 159 Eng. Rep. 375 (Ex. 1864)). At argument MetroStar distinguished between "ambiguities" and "defects" in solicitations, but the difference appears academic for present purposes.

MetroStar's theory seems to be that CACI could have relied on the number mentioned in the Marine Corps briefing (which MetroStar incorporated into its proposal) rather than on its own experience. Pl.'s Reply at 7–8. But MetroStar does not argue that it was arbitrary or capricious for the Marine Corps to think that both offerors acted reasonably based on the information they had. AR 2380–81. The fact that CACI could have made different factual assumptions thus does not dispel the ambiguity, but rather confirms it. Nor does MetroStar address the Marine Corps' conclusion that *neither* offeror was able to anticipate the Corps' real needs. AR 2380. Plainly, a solicitation can be ambiguous if offerors cannot tell what the agency wants. *Bear Mountainside Realty LLC v. United States*, 168 Fed. Cl. 179, 187–88 (2023); *Mlinqs, LLC v. United States*, No. 22-1351, 2023 WL 2366654, at *30 (Fed. Cl. Mar. 6, 2023); *Open Spirit, LLC v. United States*, 131 Fed. Cl. 756, 779 (2017); *Shields Enters.*, 28 Fed. Cl. at 631.

As a fallback, MetroStar asserts (dubiously) that CACI could not have successfully protested an award to MetroStar after relying on its experience rather than on the briefing. Pl.'s Reply at 8. It is hard to see why that bears on the existence of an ambiguity. And even if it is true, it is incomplete: Perhaps the Marine Corps would have awarded the contract to CACI, and MetroStar would have protested that CACI's inside knowledge gave it an unfair advantage. MetroStar overlooks that possibility entirely. All of this bears out the Marine Corps' sense that the Solicitation contained an ambiguity — or some kind of informational lacuna — that called for correction.

### 1. *The Solicitation's factual context*

MetroStar opens its argument by questioning the Marine Corps' motive for the cancellation. Pl.'s MJAR at 13–14. Procurement cancellations can be set aside when an agency acts for improper reasons. *See Def. Tech., Inc. v. United* States, 99 Fed. Cl. 103, 122 (2011) (citing *Parcel 49C Ltd. P'ship v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994)). But that requires clear and convincing evidence. *Syneren Techs. Corp. v. United States*, 166 F.4th 1040, 1046 (Fed. Cir. 2026). MetroStar offers none whatsoever, and disavowed the suggestion at argument.

Instead, MetroStar emphasizes the atmospherics. At the time the Solicitation was cancelled — MetroStar explains — the procurement had already been pending for some time, and the Marine Corps had issued a sole-source contract extension to CACI, the incumbent. AR 2512. Yet MetroStar does not challenge anything about the sole-source award itself. Pl.'s MJAR at 13. Nor, again, did it offer evidence that in extending the incumbent's performance, the Marine Corps did anything wrong. That leaves MetroStar hinting vaguely that because the Marine Corps' decision "directly implicates the competitive environment" and will have "downstream impact … on the continuation of noncompetitive awards," this Court should apply some sort of "heightened scrutiny." *Id.* at 13–14.

MetroStar cites no authority for any of this. At argument, it waived the argument for applying any standard of review other than the usual one. In the absence of facts or law requiring otherwise, I will stick to the standard laid down by Congress and the Federal Circuit.

### 2. *"Important aspects of the problem"*

MetroStar next asserts that the Marine Corps failed to consider "important aspects of the problem" when cancelling the solicitation. Pl.'s MJAR at 14–17; Pl.'s Reply at 12–13. MetroStar claims that cancelling the Solicitation will reduce competition; waste time before meeting the Marine Corps' urgent procurement needs; throw away the offerors' investment of time and resources in their proposals; and lead to more sole-source awards to the incumbent. Pl.'s MJAR at 14–17; Pl.'s Reply at 4–5.

MetroStar's terms, at least, are rooted in the applicable legal standard. Complete failure to consider "an important aspect of the problem" is a long-recognized basis for setting aside agency action as arbitrary and capricious. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020); *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). But MetroStar's real argument is largely indistinguishable from claiming the Marine Corps should have adopted a narrower

corrective action. MetroStar argues that the Marine Corps should have considered resolving the ambiguity by revising the Solicitation, disclosing historical change request data, engaging in additional clarifications with offerors, or the like.[6] Pl.'s MJAR at 14–16. That can all be rejected out of hand: As mentioned, given that cancellation was rational, the Marine Corps had no duty to narrowly tailor its corrective action to the problem it identified. It therefore did not have to specifically address and reject the alternatives MetroStar proposes. *Dell Fed. Sys.*, 906 F.3d at 998. MetroStar cannot expand the Marine Corps' obligations by recharacterizing its preferred measures as "important aspects of the problem."

More fundamentally, MetroStar does not establish why the Marine Corps was obligated to devote more attention to the considerations it mentions. At least one of the matters MetroStar raises — "how to address a perceived ambiguity … that may have created an unlevel playing field" — plainly *was* considered by the Marine Corps, and in explicit terms. *See* Pl.'s MJAR at 14. It is simply that MetroStar does not like the Corps' decision.

At most, MetroStar points out that the Corps did not specifically consider the sole-source award to CACI or the past investment of time in the Solicitation when deciding to cancel. But those considerations are not "important" in the relevant sense. This Court "is not free to invent 'important' things out of thin air and require the agency to consider them. It may only ensure that the agency's decision is supported by reasoned judgment and that the agency considered the factors it was required by law to consider." *State of N. Carolina Bus. Enters. Program v. United States*, 110 Fed. Cl. 354, 363–64 (2013); *accord A Squared Joint Venture v. United States*, 145 Fed. Cl. 676, 682 (2019). That means "[a]n 'important aspect of the problem' is not simply whatever plaintiffs would like the [agency] to consider," but rather "turns on what a relevant substantive statute makes 'important.'" *State of N. Carolina Bus. Enters. Program*, 110 Fed. Cl. at 364 (quoting *Oregon Nat. Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996)); *accord A Squared Joint Venture*, 145 Fed. Cl. at 682; *see also Gay v. McDonough*, No. 2021-1226, 2021 WL 4944470, at *4 (Fed. Cir. Oct. 25, 2021).

---

[6] MetroStar suggests that the cancellation decision is "internally inconsistent" because it sometimes refers to revising the Solicitation without specifying whether the revision would be before or after cancellation. Pl.'s MJAR at 15. The Court has always discouraged bid protest plaintiffs from supporting their arguments with petty linguistic games. Instead we give agency decisions a "fair reading." *See Harmonia II*, 160 Fed. Cl. at 690; *Your Recruiting Co. v. United States*, 106 Fed. Cl. 419, 427 (2012). The Marine Corps' decision is quite clear.

So start with the notion that the Marine Corps should have paid more attention to competition.[7] It is not enough that federal contracting law has a general preference for competition: Open competition may be a "goal" of federal contracting, but that "does not mean it is an 'important aspect' of the problem" the Marine Corps was addressing at the moment. *See Jorman v. Veterans Admin.*, 579 F. Supp. 1407, 1418 (N.D. Ill. 1984); *see also Fla. Health Scis. Ctr., Inc. v. Becerra*, No. CV 19-3487, 2021 WL 2823104, at *10 (D.D.C. July 7, 2021) (agency need not address "free-floating policy considerations" unconnected to specific statutory mandates). MetroStar has not pointed to any "substantive statute" making the sole-source award important to the cancellation decision. *State of N. Carolina Bus. Enters. Program*, 110 Fed. Cl. at 364. Nor has MetroStar identified any decision requiring an agency to consider the existence of a sole-source contract as weighing against solicitation delays or amendments.

MetroStar has waived any challenge to the past sole-source award. Pl.'s MJAR at 13. Nor has it developed an argument that further sole-source awards would be improper. If nothing required the Marine Corps to consider the sole-source award, and if there is no legal problem with either the sole-source award or the possibility of future sole-source awards, then the effect of cancellation on competition was not "problematic" in a legal sense, and the Marine Corps cannot be faulted for bypassing it. *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1316 (Fed. Cir. 2021) (emphasis omitted). It may not be to MetroStar's advantage that CACI receives sole-source awards while competition for a new contract proceeds slowly, but unless that poses a legally relevant problem of some kind, MetroStar is making noise about nothing.

As for the Solicitation's timing, the Marine Corps determined that extra time would be helpful to its procurement needs. Notwithstanding MetroStar's concern, the Corps is the best judge of that, *see, e.g.*, *Savantage Fin. Servs., Inc. v. United States*, 150 Fed. Cl. 307, 318 (2020), and is best positioned to make the tradeoff between obtaining services promptly versus correcting solicitation errors. The Marine Corps plainly did so, at least implicitly. *See Nucor Corp. v. United States*, 414 F.3d 1331, 1339 (Fed. Cir. 2005) ("Where an agency has not made a particular determination explicitly, the agency's ruling nonetheless may be sustained as long as 'the path of the agency may be reasonably discerned.'") (quoting *Ceramica Regiomontana, S.A. v. United States,* 810 F.2d 1137, 1139 (Fed. Cir. 1987) (itself quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286 (1974))).

---

[7] The Marine Corps *did* consider competition as between MetroStar and CACI as offerors on the Solicitation. AR 2380–81.

MetroStar's arguments on competition and timing are irrelevant for other reasons. As MetroStar conceded at argument, there would have been at least some delay even if the Marine Corps had decided only to amend the Solicitation, meaning that CACI likely would have ended up performing under a sole-source award anyway. MetroStar might anticipate that the procurement would be running sooner if the Corps had amended without cancelling, but that is speculation. The opposite might even be true: The Marine Corps could have found, after preparing all its desired amendments, that cancellation was required under FAR § 15.206(e), which would delay the procurement even more. MetroStar has not challenged the amount of time the Marine Corps has taken to prepare a new solicitation, and admitted at argument that processes for issuing and amending solicitations do not have mandatory fixed timelines. The practical effect of the cancellation on competition and timing, in short, is unknowable, poorly suited to legal supervision, and possibly small.

Moving to the other topic the Marine Corps supposedly left unaddressed — the offerors' past efforts devoted to the Solicitation — MetroStar has things precisely backwards. Work done in the past is a "sunk cost," and "[i]t is a basic principle of economics that sunk costs should be ignored when making a rational decision about whether to make further expenditures." *Grand Canyon Tr. v. Provencio*, 26 F.4th 815, 825 (9th Cir. 2022) (collecting authorities). In fact, the Marine Corps likely would have acted arbitrarily and capriciously if it had acted as MetroStar urges. *See Fresno Mobile Radio, Inc. v. F.C.C.*, 165 F.3d 965, 969 (D.C. Cir. 1999) (rejecting agency reliance on sunk costs as "a foolish notion that should not be entertained by anyone who has had even a single undergraduate course in economics"). MetroStar is thus the one taking the irrational position.

### 3. The Marine Corps' stated reasons

As explained above, the Marine Corps articulated several reasons for its decision to cancel the Solicitation. MetroStar contends that "*[n]one*" of those reasons is "rationally related to the decision to cancel the procurement." Pl.'s MJAR at 18 (emphasis added); Pl.'s Reply at 12 ("The primary contention is that cancellation, *on this record*, is not rational.") (emphasis modified). That is a heavy lift, and MetroStar cannot carry it.

Some of MetroStar's arguments rehash the theory that cancelling the Solicitation was too aggressive a solution for the ambiguity the Marine Corps identified. Pl.'s MJAR at 18 ("[T]he [Corps] made no attempt to explain how the identified defect [*i.e.*, the ambiguity] justified the decision to cancel the RFP."); *id.* at 24–25, 26–28 (arguing that cancelling the Solicitation was not necessary to correct the informational imbalance, reconstitute the evaluation and selection teams, or

reduce litigation risk); Pl.'s Reply at 22–23 (arguing that the Solicitation's structure allowed the Marine Corps to anticipate changed needs and directives). That argument fails for the same reasons discussed above. A corrective action is not irrational simply because it is broader than necessary. *Dell Fed. Sys.*, 906 F.3d at 991–92.

Other arguments distort what the Marine Corps said and did. MetroStar claims, for example, that the Marine Corps "used the late discovery of an ambiguity as an excuse or even pretext to make changes to the procurement." Pl.'s MJAR at 19. Nothing in the Corps' decision compels that interpretation. The Corps said that while the latent ambiguity was "the primary driver behind the decision to cancel this solicitation," the opportunity to review the Solicitation for potential improvements contributed to the decision. AR 2381. The Marine Corps specifically mentioned several potential improvements.[8] There is nothing especially surprising about any of that: Given that the Marine Corps found a serious problem it wanted to correct, it would try to improve the Solicitation in other ways too.

MetroStar has no evidence of pretextual decision making, let alone bad faith. But making the most of what it has, MetroStar argues that the Marine Corps did not adequately define what changes (other than correcting the change-request ambiguity) it planned to make. For example, the Marine Corps had not yet identified any Solicitation provisions as "no longer necessary … or insufficiently defined," and had not yet determined that the potential technology upgrade would be "feasible" or "beneficial." Pl.'s MJAR at 20 (quoting AR 2381, 2383). MetroStar also objects that the Marine Corps did not have any specific political directives in mind when it decided to cancel and re-evaluate the Solicitation. *Id.* at 25–26.

Yet the absence of more detailed planning or evidence is just another molehill. An agency has discretion to take corrective action when a reasonable question arises, even if it does not necessarily have specific evidence of a specific problem or a specific plan for fixing it.[9] *Bear Mountainside Realty LLC v. United States*, 168 Fed. Cl. 179,

---

[8] Those included reviewing the Solicitation for other ambiguities; revising work requirements "identified as either no longer necessary … or insufficiently defined"; adding a technology upgrade that "could enhance efficiency, reduce costs, and provide a more streamlined approach to fulfilling the organization's overall requirements"; and aligning the Solicitation with political developments. AR 2381.

[9] There might be times where cancelling a solicitation requires a stronger basis in the administrative record. For example, FAR § 15.206(e) provides that a solicitation *must* be cancelled when "the contracting officer, based on market research or otherwise," finds that "an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted." One of my colleagues has interpreted that to mean that cancellation is not required unless the record shows the agency had "some concrete basis for concluding *both* that the proposed amendment is a cardinal change

200 (2023), *aff'd,* No. 2024-1245, 2025 WL 2318317 (Fed. Cir. Aug. 12, 2025); *Yang Enters., Inc. v. United States*, 156 Fed. Cl. 435, 451–52 (2021); *Shields Enters.*, 28 Fed. Cl. at 636. Here, the Marine Corps perceived value in reevaluating aspects of the Solicitation in the course of correcting an ambiguity, and it is hard to see the point of preventing the Corps from doing so.

Once we dispense with the fluff, what remains for MetroStar is to reframe its arguments as a matter of agency rationality. Pl.'s MJAR at 15 (claiming that "[t]he perceived ambiguity and concern regarding an unlevel playing field bears *no relation* to the decision to cancel") (emphasis added); *see also* Pl.'s Reply at 5, 14. This Court can of course set aside an agency's solution that does not rationally bear on the problem. *Cf. GHS Health Maint. Org., Inc. v. United States*, 536 F.3d 1293, 1303 (Fed. Cir. 2008). But calling the Marine Corps' reasons irrational is pure hyperbole.

Take the change-request ambiguity first. If a solicitation has a latent ambiguity that infects the offers and creates risks for litigation and contract management, cancelling the solicitation is a solution: It rules out the risks associated with award. Revising and reissuing a solicitation after cancellation offers a way forward for the same reason. That is enough for cancellation to be rational. Cancelling for purposes of revision (or potential revision) might be strong medicine, but if it addresses a problem, whether it is *necessary* or *prudent* is beyond this Court's purview. *Dell Fed. Sys.*, 906 F.3d at 991–92.

The same applies to most of the Marine Corps' other stated reasons for cancellation, *i.e.*, review for other ambiguities, possible changes in the scope of work, confirming consistency with political direction, and so forth. Once the Marine Corps identified one serious ambiguity, it could not have been irrational to want to look for others. Similarly, once the Marine Corps sees a reason to make a correction to the Solicitation, it can hardly be irrational for the Corps to consider other ways to improve

---

*and* 'that additional sources likely would have submitted offers had the substance of the amendment been known to them.'" *See Seventh Dimension, LLC v. United States*, 160 Fed. Cl. 1, 20 (2022) (quoting FAR § 15.206(e))). But other decisions take a different approach. *See Madison Servs.*, 92 Fed. Cl. at 128 (reasoning that "all that FAR 15.206(e) requires is a reasonable basis" and rejecting the argument that such a basis must include "research").

I do not need to reach the split in authority because although the Marine Corps' cancellation decision quotes that regulation, its reasoning relies on other grounds. Instead of pointing to "market research," "an amendment proposed for issuance," what the offerors "reasonably could have anticipated," or the possibility of "additional sources" submitting offers, *see* FAR § 15.206(e), the cancellation decision describes various reasons why the Solicitation may not have served the Marine Corps' needs as written. That suggests the Marine Corps cancelled the Solicitation as a matter of discretion, so the potentially higher requirements for mandatory cancellation pursuant to FAR § 15.206(e) were never in play. To the extent any other statutes or regulations impose procedural or evidentiary limits on cancellation here, MetroStar has not identified them.

the Solicitation at the same time. As for revisions motivated by political needs in particular, MetroStar does not seem to consider it inconceivable that such directions could have been relevant to the Solicitation. It argues only — as mentioned above — that the Corps did not identify any *particular* direction, which the Corps was not obligated to do.[10]

MetroStar argues that one of the Marine Corps' additional reasons for cancellation was unrelated to the Solicitation itself: namely, the possible lack of independence among members of the evaluation and selection teams. Pl.'s MJAR at 31. But even there, the record indicates that the teams were involved with source selection even before cancellation. *See* AR 2065 (clarification questions directed to MetroStar and CACI by the source selection evaluation team); AR 2144 (similar). Some decisions of the teams, in other words, were already baked into the procurement before the Solicitation was cancelled. If the teams were inappropriately constituted, simply reconstituting them and proceeding would not necessarily have been a complete solution. The Marine Corps could thus reasonably conclude that as long as the Solicitation contained a latent ambiguity, cancellation would also provide the opportunity to form new teams and start from a clean slate.

It bears repeating that the Marine Corps said discovery of the change-request ambiguity was the "primary driver behind the decision to cancel this solicitation" while the other considerations "also contributed to the determination that re-evaluation and potential revision of the solicitation were necessary." AR 2381. Whether it would have been rational to cancel the Solicitation only because of those secondary concerns, individually or in combination, might pose a different matter. Pl.'s MJAR at 20. But there is no reason here that they could not serve as additional considerations in support of cancellation.

MetroStar's only other argument worth mentioning is its effort to burn a straw man: It accuses the government of arguing that "cancelling [a solicitation] to address a latent ambiguity is automatically rational, notwithstanding the agency's own explanation for the decision and the relevant record." Pl.'s Reply at 9. But the government argued nothing of the kind, so that aspect of MetroStar's argument requires no further attention.

---

[10] The cancellation decision refers to a direction from the Department of Government Efficiency ("DOGE") that the government has been unable to find or identify: "DOGE Directive 2023-01 on IT cost savings." AR 2383. What the Marine Corps meant is a mystery to everyone. But again, MetroStar does not seem to question the premise that DOGE instructions may have been relevant to the Solicitation (though it argues the Marine Corps should have been more specific). In any event the Marine Corps treated compliance with DOGE instructions only as one of several ancillary benefits to cancellation, in addition to correcting the change-request ambiguity.

## CONCLUSION

For the foregoing reasons, MetroStar's motion for judgment on the administrative record (ECF 26) is **DENIED** and the government's cross-motion (ECF 30) is **GRANTED**. The case is **DISMISSED**.

Pursuant to the Court's December 9, 2025 Protective Order (ECF 9), this Opinion has been issued under seal. The parties shall have two weeks to propose redactions and, accordingly, shall file notice of their proposed redactions no later than **April 27, 2026**. To aid the Court's evaluation of the proposed redactions and in light of the "presumption of public access to judicial records," *Baystate Techs., Inc. v. Bowers*, 283 F. App'x 808, 810 (Fed. Cir. 2008) (per curiam), each party shall file a memorandum (or a joint memorandum if the parties agree) explaining why redactions are necessary for each item of information for which a redaction is proposed.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge